**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MIKE SCOTT PODEWELL,** | ) |
| | ) No. 10 CV 7942 |
| Plaintiff, | ) |
| v. | ) |
| | ) Magistrate Judge Young B. Kim |
| **MICHAEL J. ASTRUE,** *Commissioner* | ) |
| *of Social Security*, | ) |
| | ) August 3, 2011 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Mike Podewell applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382c, claiming that his bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), and Parkinson's-related tremors preclude him from working. An administrative law judge ("ALJ") concluded that only Podewell's mental impairments are severe, and that even those are not disabling. The ALJ denied Podewell's applications for benefits—a decision Podewell is challenging in the current motion for summary judgment. For the following reasons, the motion is granted:

**Procedural History**

Podewell applied for SSI and DIB in December 2007, claiming that his disability began on November 18, 2007. (A.R. 147, 152.) The Commissioner denied his claims initially and on reconsideration. (Id. at 76-79.) Podewell then requested a hearing before an ALJ. (Id. at 98.) After conducting the hearing and considering the medical evidence, the

assigned ALJ denied Podewell's claims on March 19, 2010. (Id. at 11-23.) When the Appeals Council denied review, (id. at 1), the ALJ's decision became the final decision of the Commissioner, *see Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). Podewell then filed the current suit seeking judicial review of the ALJ's decision. *See* 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of this court. *See* 28 U.S.C. § 636(c); (R. 9).

## Facts

Podewell has struggled with bi-polar disorder and ADHD since childhood, and at the age of 42, he began experiencing symptoms of Parkinson's disease. (A.R. 32, 38, 43.) In applying for disability benefits, Podewell claimed that in November 2007 he became disabled by a combination of his ADHD, anxiety, memory loss, numbness, and "terrible left hand shaking." (Id. at 200.) Podewell says that these conditions forced him to quit his job as a waiter and rendered him incapable of performing other work. (Id.) At his February 2010 hearing before the ALJ, Podewell introduced both documentary and testimonial evidence in support of his claims.

**A.     Medical Evidence**

The medical record reveals that in the two and a half years leading up to his hearing Podewell was treated for bipolar disorder, ADHD, and depression. He was prescribed several medications to treat these conditions, including Cymbalta (for depression and anxiety). (A.R. 207.) In August 2008 a medical evaluator for the Social Security Administration ("SSA"), Terry Travis, reviewed Podewell's psychiatric file and submitted

2

an evaluation of Podewell's residual functional capacity ("RFC"). (Id. at 441-53.) Travis concluded that Podewell's ADHD and bipolar disorder caused only moderate limitations in his activities of daily living and his ability to maintain social functioning, concentration, persistence, and pace. (Id. at 451.) Despite receiving psychiatric treatment throughout 2008 and 2009, (id. at 466-81, 575-91), Podewell was hospitalized following a suicide attempt on September 25, 2009, (id. at 528-33). During his hospitalization Podewell told his care-givers that he intentionally overdosed on Lexapro—a drug prescribed to treat depression—because he felt he was a burden to his family. (Id. at 530.) He was released from the hospital four days later, after his doctors adjusted his medications. (Id. at 533.)

Beginning in late 2007, Podewell also sought treatment for hand tremors. After he fell down and injured his head, (A.R. 315), Podewell was seen by a neurologist named Dr. Yu Liu. Podewell told Dr. Liu that he had been experiencing dizziness and headaches intermittently for more than a year, and that he was currently experiencing hand tremors. (Id. at 333, 353.) Dr. Liu characterized the shaking in his hands as "a benign essential tremor." (Id. at 353.) Beginning in February 2008, Podewell was treated by another neurologist, Dr. Marvin Zelkowitz. (Id. at 483.) A month after their first appointment, Dr. Zelkowitz wrote to the Illinois Department of Human Services to report that Podewell has Parkinson's Disease. (Id. at 394.) Parkinson's is a degenerative motor system disorder, with early symptoms including shaking, rigidity, and slowness of movement. *See* http://www.ninds.nih.gov/disorders/parkinsons_disease/parkinsons_disease.htm (last visited

3

08/01/11). Dr. Zelkowitz wrote that Podewell's condition includes "severe bradykinesia,"—or slowness of movement, *see id.*—and noted that "the tremor is present in his arms and legs," (A.R. 394). He wrote that Podewell has difficulty with "his gait and station" and with dexterous movements, including handling objects. (Id.) Dr. Zelkowitz opined that given the relatively early onset of Podewell's disease, "he is likely to become significantly worse in a relatively short period of time." (Id.)

Following Dr. Zelkowitz's report, SSA medical reviewer Dr. Jack Kundin conducted an analysis of Podewell's case. (A.R. 398.) Dr. Kundin noted that a few weeks before Dr. Zelkowitz wrote his letter describing Podewell's severe tremors and gait difficulties, Podewell had completed a form reporting his daily activities in which he made no mention of having trouble walking. (Id.) He noted that Parkinson's is a "slowly progressive disorder," and that for Podewell's condition to deteriorate so rapidly "is not at all typical." (Id.) He recommended that SSA recontact Dr. Zelkowitz to see whether he thought Podewell's movement disorder might be a side-effect of the Cymbalta Podewell was prescribed for depression. (Id.)

In response to Dr. Kundin's analysis, in June 2008 Dr. Zelkowitz completed a neurological report reaffirming his diagnosis of Parkinson's Disease. (A.R. 402-03.) He advised that Podewell's tremors "will only deteriorate over time and will be a life-long affliction," but did not provide further details. (Id. at 402.) A month later Dr. Admasu Kumssa, an internist, performed a consultative examination of Podewell on behalf of SSA.

4

(Id. at 411-15.) In his report, Dr. Kumssa stated that Podewell has a tremor in his right hand, but that it was "not very typical for Parkinson's." (Id. at 414.) He also noted that when Podewell was distracted his hand did not shake as much. (Id.) Dr. Kumssa nonetheless diagnosed Podewell as presenting with "Parkinsonism" as well as bipolar disorder and ADHD. (Id. at 415.)

Following the consultative examination, Dr. Reynaldo Gatanco reviewed the file and provided SSA with an RFC assessment. (A.R. 433-440.) Dr. Gatanco opined that Podewell has no manipulative limitations and only mild exertional limitations. (A.R. 434, 436.) Dr. Gatanco acknowledged Dr. Zelkowitz's diagnosis of Parkinson's, but noted that Podewell was taking Cymbalta, which can cause tremors as a side effect. (Id. at 440.) Dr. Gatanco found Podewell's claims to be only "partially credible" because, according to his review of the notes from the consultative exam, Podewell's "symptoms are due to the side effects of his medications," and not Parkinson's disease. (Id.)

Six months after Dr. Gatanco completed his RFC assessment, Dr. Zelkowitz completed a separate assessment at Podewell's request. (A.R. 483-87.) Much of the RFC form is left blank, but Dr. Zelkowitz checked boxes indicating that Podewell experiences tremors, impaired gait, muscular aches, and chronic fatigue. (Id. at 483.) He did not check the boxes indicating rigidity, bradykinesia, or difficulty in initiating gait. (Id.)

In July 2009 Podewell began seeing a physical therapist for treatment for his tremors and pain in his right shoulder. (A.R. 521.) Podewell's physical therapist noted that during

5

his intake evaluation Podewell presented with constant movement, including tremors and periodic difficulty initiating gait. (Id.) He commented that Podewell is "unable to sit at rest without demonstration of resting pill-rolling tremors." (Id. at 522.) The therapist also noted that Podewell has tenderness in his right shoulder, "which is possibly due to degenerative joint disease." (Id.)

The therapist's notation is only one piece of the documentation describing Podewell's right shoulder pain. Podewell sought treatment for his right shoulder in May 2008, when he reported to a hospital with pain and decreased range of motion. (A.R. 553.) An MRI revealed "erosive changes . . . consistent with degenerative change." (Id.) Six months later Podewell saw an orthopedist who referred him to physical therapy. (Id. at 488.) The physical therapist assigned to treat Podewell's shoulder noted that his symptoms include "decreased range of motion, decreased strength, pain, [and] difficulties with activities of daily living." (Id. at 492.)

**B.     Podewell's Testimony**

During the hearing Podewell testified that his tremors and ADHD forced him to quit working as a waiter in October 2007. (A.R. 34.) According to Podewell, his ADHD prevents him from memorizing a menu or communicating effectively with the front desk. (Id. at 56.) He said that none of the treatments he has tried have helped him regain good concentration. (Id. at 57-58.) Podewell also explained that he has suffered from bipolar disorder for his whole life, and that for a period up until just before he quit working, he

would "self-medicate" his moods with cocaine. (Id. at 38-39.) After he was caught driving under the influence in September 2007, Podewell went through drug rehabilitation and has "been clean to this day." (Id. at 39-41.)

Podewell testified that his Parkinson's symptoms set in right around the time he began treatment for his cocaine use. (A.R. 43.) He told the ALJ that although he had been diagnosed with Parkinson's Disease and was taking medication to treat the tremors, the medication has not reduced his shaking. (Id. at 35-36.) Podewell said that the shaking makes it difficult for him to type on the computer or handle small objects. (Id. at 59-60.) He said that the tremor is predominantly in his left hand, which is his dominant hand. (Id.) Podewell also testified that he feels fatigued "all the time," that he generally takes a two-hour nap every day, and that if he does not nap he is "cranky" and "sluggish." (Id. at 61.)

In discussing his daily activities, Podewell testified that his fiancé does most of the household chores and that he spends most of his day sitting or lying down and watching television. (Id. at 47-48.) Although he said that he "really [doesn't] have a good answer why" he did not do those chores previously, about a month before the hearing he started experiencing dizzy spells and "freezing up every once in a while." (Id. at 48-49.) Podewell explained that the dizzy spells, which happen a few days out of the week and last for about 15 minutes, prevent him from helping around the house. (Id. at 48-52.) He also said that the tear in his right shoulder prevents him from lifting heavy objects. (Id. at 49-50.)

C.  **Vocational Expert's Testimony**

The ALJ called Gleanne Kerr, a vocational expert ("VE"), to provide an opinion regarding the kinds of jobs Podewell could perform assuming certain hypothetical limitations. (A.R. 64.) The ALJ asked Kerr to assume a person with a moderate inability to maintain concentration or understand and carry out detailed job instructions, and asked how those limitations would impact the person's ability to work. (Id. at 65-66.) Kerr testified that the hypothetical limitations would prevent a person from working as a waiter, but not from performing jobs such as housekeeper, mail clerk, or information clerk. (Id. at 66-67.) Podewell's attorney then proposed a separate hypothetical. He asked Kerr to assume a person with tremors who has only occasional use of his dominant hand and who is limited to sedentary work in the second half of a normal work day based on the symptoms of Parkinson's Disease. (Id. at 67-68.) Kerr testified that paring those limitations with moderate concentration limits would preclude competitive employment. (Id. at 68.) Kerr said that the limitations Podewell's attorney proposed would preclude him from working as a housekeeper, mail clerk, or information clerk because those jobs would require him to use his dominant hand frequently. (Id. at 69-70.)

D.  **The ALJ's Decision**

After considering the proffered evidence, the ALJ concluded that Podewell is not disabled. (A.R. 23.) To reach that determination, the ALJ applied the standard five-step sequence, *see* 20 C.F.R. § 404.1520(a), which requires him to analyze:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (quoting *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)). If at step three of this framework the ALJ finds that the claimant has a severe impairment which does not meet the listings, he must "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). The ALJ then uses the RFC to determine at steps four and five whether the claimant can return to his past work or to different available work. 20 C.F.R. § 404.1520(e)-(g).

Here, at steps one and two of the analysis the ALJ determined that Podewell has not been employed since November 18, 2007, and that his only severe impairments are affective disorder and ADHD. (A.R. 13.) The ALJ acknowledged that Podewell "alleges tremors," but he found those to qualify as a "nonsevere impairment." (Id.) In explaining that characterization, the ALJ said that Dr. Kundin described Podewell's tremors as "not consistent with Parkinson's disease, and opined that the claimant's movement disorder might abate following a trial of Cymbalta withdrawal." (Id.) The ALJ also noted that Podewell complained of tremors in his left hand but presented at the consultative exam with tremors in his right. (Id.) The ALJ acknowledged Dr. Zelkowitz's observations and Parkinson's diagnosis, but described them as inconsistent with the record. (Id. at 14.) The ALJ said that

9

Dr. Zelkowitz's statements regarding Podewell's chronic fatigue are "not supported by even the claimant's own testimony." (Id. at 14.)

At step three, the ALJ determined that Podewell's mental impairments do not meet or equal the criteria of any of the Commissioner's listings, (id. 13-14), and that Podewell has the RFC to perform a full range of work without any exertional limitations, (A.R. 15). The ALJ stated that Podewell's only nonexertional limitations are his "moderate inability to maintain attention and concentration for extended periods so that he is off tasks [*sic*] 10% of the time, and unable to understand, remember, and carry out complex instructions." (Id.) In reaching that determination, the ALJ catalogued the medical evidence and explained that he gave "great weight" to the opinions of the state reviewing doctors and "little weight" to Dr. Zelkowitz's opinion regarding Podewell's physical limitations. (Id. at 21.) He noted that the state physician found Podewell's symptoms to be atypical for Parkinson's disease, because "there was no rigidity of the extremities, he did not shake when distracted, no limitation of range of motion of the joints, and he ambulates without the use of an assistive device." (Id.)

The ALJ's analysis of Podewell's credibility begins with the oft-repeated boilerplate stating that "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC. (A.R. 17); *see Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir.

10

2010) (characterizing this language as "meaningless boilerplate"). In fleshing out this statement, the ALJ characterized Podewell's description of his symptoms as "inconsistent," pointing again to the fact that Podewell reported left-hand tremors but presented at the consultative exam with right-hand tremors and did not shake as much when distracted. (Id. at 21.) The ALJ said that Parkinson's complaints of chronic fatigue "are not supported by the record," and found suspect the timing of Podewell's drug rehabilitation, which occurred just before his claimed disability onset date. (Id.) Finally, the ALJ disbelieved Podewell's description of his recent dizzy spells and "freezing up" periods, because "[p]resumably, Dr. Zelkowitz would have investigated these complaints if they imposed additional limitations on the claimant's functioning." (Id.) Based on these observations, the ALJ said that Podewell's testimony was "not fully credible." (Id. at 22.)

At step four the ALJ found that Podewell's RFC prevents him from performing his past work as a waiter. (A.R. 22.) But based on the VE's testimony, at step five the ALJ concluded that Podewell could perform the jobs of housekeeper, mail clerk, or information clerk. (Id. at 22-23.) Accordingly, the ALJ concluded that Podewell is not disabled and denied his application for benefits. (Id. at 23.)

**Analysis**

Podewell is entitled to a remand of this case for further proceedings. Podewell's core argument in challenging the Commissioner's decision is that the ALJ committed legal error when he failed to factor Podewell's tremors and shoulder pain into the RFC. He also argues

that the ALJ mischaracterized record evidence, improperly discounted Dr. Zelkowitz's opinion, and erroneously failed to make any credibility determination with respect to Podewell's complaints of fatigue. In reviewing the Commissioner's decision, this court reviews the ALJ's legal decisions *de novo* and his factual decisions deferentially, reversing only if they lack the support of substantial evidence. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotation marks omitted). Although the ALJ is not required to discuss all of the evidence in the record, *see Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994), this court "cannot uphold an administrative decision that fails to mention highly pertinent evidence, or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome," *Parker*, 597 F.3d at 921 (citations omitted). That said, in reviewing an ALJ's decision for substantial evidence, this court will not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869.

Podewell's central and best argument is that the ALJ committed reversible legal error when he failed to account for Podewell's tremors—which the ALJ characterized as a nonsevere impairment—in crafting the RFC. Podewell correctly points out that SSA's own regulations require the ALJ to "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would

12

be of sufficient severity." 20 C.F.R. § 404.1523. In other words, once the ALJ finds that the claimant has one or more severe impairment, he must "consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Astrue*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original). That is because a combination of impairments "might well be totally disabling" even if each of the claimant's impairments standing alone is not serious. *Martinez v. Astrue*, 630 F.3d 693, 698-99 (7th Cir. 2011). Accordingly, the Seventh Circuit has repeatedly reversed decisions denying social security benefits where the ALJ failed to consider the cumulative impact of all of the claimant's impairments on his ability to work. *See, e.g., id.*; *Parker*, 597 F.3d at 923; *Villano*, 556 F.3d at 563; *Golembiewski*, 322 F.3d at 918; *Clifford*, 227 F.3d at 873.

Here, despite acknowledging all of the record evidence supporting Podewell's allegations of tremors, and despite characterizing those tremors as a nonsevere impairment, the ALJ did not account for the combined effect of his tremors and his nonexertional limitations in concluding that Podewell can work. (A.R. 13, 15, 22.) Instead, the ALJ determined that Podewell has an RFC to "perform a full range of work at all exertional levels" and with nonexertional limitations accounting for his "moderate inability" to maintain concentration or carry out complex instructions. (Id. at 15.) But because the ALJ found Podewell's tremors to constitute a nonsevere impairment, he was obligated to consider those

13

symptoms alongside his other impairments in determining whether he could work. *See Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010).

In its response brief, the government does not explain how the ALJ's omission of Podewell's tremors from the RFC conforms to SSA's regulations or Seventh Circuit precedent. Instead the government attempts to dodge the question by arguing that the ALJ reasonably cast aside the tremors based on his observation that Dr. Zelkowitz's descriptions of Podewell's symptoms are out of line with other record evidence, which, the government points out, includes reports that Podewell's grip strength is normal and suggestions that his tremors recede when he is distracted. (R. 18, Resp. at 6-9; A.R. 13-14.) These might be reasons for the ALJ to conclude that Podewell is fabricating his symptoms and that Dr. Zelkowitz was either hoodwinked by or participated in that charade. If that is what the ALJ believed, he should have said so and given his reasons. *See Parker*, 597 F.3d at 922 (pointing out the need for an ALJ to be explicit about whether he thinks the claimant a malingerer). As long as that conclusion were supported by substantial evidence, the ALJ could have found that Podewell does not suffer from tremors at all, and thus there would have been no need to consider the tremors along with his mental impairments in crafting the RFC.

But that is not what the ALJ concluded here. The ALJ acknowledged that the tremors exist and said that they constitute a nonsevere impairment, although for the reasons the government notes, he did not accept that they are as severe as Podewell claims (exactly how

14

severe the ALJ thinks them is never made clear). (A.R. 13-14, 18-21.) But once the ALJ found that the tremors are an actual impairment, he became obligated to consider how the tremors would interact with his severe impairments as it pertains to his work capacity. *See Villano*, 556 F.3d at 563. The ALJ's failure to do so amounts to a reversible error, *see Parker*, 597 F.3d at 923, and it is especially concerning here, where the VE testified that dominant-hand tremors combined with the nonexertional limitations the ALJ described would "preclude competitive employment," (A.R. 68-70).

The same goes for the ALJ's treatment of Podewell's shoulder injury. In contrast to his treatment of the tremors, at step two the ALJ did not identify shoulder pain as being among Podewell's impairments, but he did include the evidence of shoulder pain in his cataloguing of evidence at the RFC stage. For example, he acknowledged that the MRIs of Podewell's shoulder showed degenerative changes and a tear in the tendon. (A.R. 19.) The ALJ also acknowledged that seven months before the hearing, despite months of physical therapy, Podewell had shoulder pain when he tried to lift trays in the range of 10-15 pounds. (Id.) The ALJ nonetheless did not factor those findings into the RFC because "claimant testified that he had no physical limitations prior to one month before the hearing." (Id.) But Podewell testified that the tear in his right rotator cuff prevents him from lifting weight over his shoulder, and the ALJ acknowledged that testimony in describing the evidence earlier in his decision. (Id. at 17, 49.) The ALJ also noted that in July 2008 Podewell "had normal range of motion of the shoulders," (id. at 19), but whether he could move his shoulders is a

separate inquiry from whether his shoulder injury causes lifting restrictions. Thus the only reasons the ALJ gave for casting aside the documented evidence of Podewell's lifting problems are inaccurate or off-point. *See Terry v. Astrue*, 580 F.3d 471, 477-78 (7th Cir. 2009) (remanding where ALJ mischaracterized record). Accordingly, on remand the ALJ should either factor Podewell's shoulder pain and resulting lifting difficulty into the "constellation of ailments," *see Golembiewski*, 322 F.3d at 918, or provide a supported explanation for his decision not to do so.

Podewell also takes issue with the ALJ's treatment of his complaints of fatigue, arguing that the ALJ gave unsupported reasons for rejecting Podewell's and Dr. Zelkowitz's reports of his fatigue. That argument challenges the ALJ's credibility assessment, an aspect of his decision that is entitled to special deference. *See Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). This court reviews an ALJ's credibility determination only to ensure that it is "reasoned and supported." *Id.* As Podewll points out, here the ALJ noted that Dr. Zelkowitz reported that as of January 2009 Podewell's symptoms include chronic fatigue, but rejected that report because, according to the ALJ, it "is not supported by even claimant's own testimony." (A.R. 14.) The ALJ's statement is puzzling, because three pages later in his decision, the ALJ acknowledges that Podewell "testified that he has fatigue, and that he naps for two hours a day," and that "[w]ithout a nap, the claimant reported, he feels cranky and sluggish." (Id. at 17.) In other words, Podewell's testimony in fact *does* support Dr. Zelkowitz's report. In rejecting Podewell's own accounts of his fatigue, the ALJ simply

states that those reports "are not supported by the record," repeating his statement that "[t]he claimant reported that he had no physical restrictions until one month prior to the hearing." (Id. at 21.) But once again that explanation is inaccurate. Podewell testified that his Parkinson's symptoms extend back into 2007, and testified that he feels fatigued "all the time." (A.R. 61.) At no point does he suggest that his fatigue—in contrast to his dizzy and freezing spells—began just a month before the hearing. Because the ALJ's reasons for discrediting the reports of Podewell's fatigue are unsupported, that aspect of the decision cannot stand. *See Larson v. Astrue*, 615 F.3d 744, 751-52 (7th Cir. 2010).

Finally, Podewell challenges the ALJ's analysis of the weight owed to Dr. Zelkowitz's diagnosis versus the opinions of the state physicians. Although the flaws in this aspect of the ALJ's analysis may not, standing alone, amount to reversible error, the ALJ should correct them on remand. For example, the ALJ said that Dr. Gatanco reported that Podewell "did not shake when distracted," when in reality, both Dr. Gatanco and Dr. Kumssa, on whose consultative examination report Dr. Gatanco relied, said that upon distraction Podewell "does not shake as much." (A.R. 21, 434.) In discounting Dr. Zelkowitz's account of Podewell's symptoms, the ALJ was correct to point out that his description of Podewell's condition conflicted with that of the consultative examiner. (Id. at 14.) But as explained above, to the extent that the ALJ rejected Dr. Zelkowitz's reports because the ALJ perceived a conflict between them and Podewell's testimony describing his fatigue and physical condition prior to one month before the hearing, (*see* id.), that aspect of the decision is unsupported. It also

17

must be noted that in assigning Dr. Zelkowitz's opinion little weight the ALJ said nothing regarding the required checklist of factors under 20 C.F.R. § 404.1527(d). On remand, the ALJ should address those factors and clarify his analysis of the medical opinions to correct the above-cited inconsistencies.

## Conclusion

For the foregoing reasons, the motion for summary judgment is granted, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this opinion.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**